IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gifford Brown, #297244, | ) | C/A No.: 1:12-139-TLW-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Warden Cartledge, McCormick | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Gifford Brown is an inmate at the McCormick Correctional Institution of

the South Carolina Department of Corrections who filed this pro se petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 against Warden Cartledge.[1] This matter is

before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.)

for a Report and Recommendation on Respondent's return and motion for summary

judgment. [Entry #15, #16].   Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

1975), the court advised Petitioner of the summary judgment and dismissal procedures and

the possible consequences if he failed to respond adequately to Respondent's motion by

May 21, 2012. [Entry #17].   Petitioner filed a response on May 23, 2012. [Entry #22].

Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's motion for summary judgment be granted.

---

[1]   The petition incorrectly spelled Respondent's name as Cutludge. [Entry #1]. The Clerk's
Office is directed to change the caption to reflect the proper spelling of Respondent's name
as Cartledge.

I.    Factual Background

At trial, Petitioner's co-defendant, Johnny Sellers, testified that he, Petitioner, Ricky, and another male were riding around on the night of April 29, 2003 after having been drinking.   Sellers testified that they stopped at a liquor store in Hemingway, South Carolina, where Petitioner shot Ricky during the course of robbing him.   Ricky testified that he was "pretty well intoxicated" and recalled having been punched by Petitioner and waking three or four days later in the hospital, where he remained for weeks. Ricky testified that he had surgery where doctors "put about 150 pieces of my jaw back together" after having suffered a gunshot wound to his face.   He testified that $80 he had in his pocket was missing.

II.    Procedural Background

Petitioner was indicted by the Williamsburg County grand jury in August 2003 for assault and battery with intent to kill (ABWIK), armed robbery, and possession of a weapon during a violent crime (weapon charge)(03-GS-45-0155). [Entry #15-16 at 6-8]. He was represented by W. LeGrand Carraway, Esq. at a trial on October 16-17, 2003 before the Honorable Thomas W. Cooper, Jr. [Entry #15-1 at 3]. After the jury convicted Petitioner of armed robbery and ABWIK, Judge Cooper sentenced him to 30 years for armed robbery and 20 years concurrent for ABWIK. [Entry #15-4 at 17-18].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). [Entry #15-6]. On appeal, Petitioner was represented by Wanda P. Hagler of the South Carolina Commission on Appellate Defense who filed an

*Anders*[2] brief on March 8, 2005 raising the following issue: "The lower court erred in allowing the state to exercise one peremptory challenge in a discriminatory manner." [Entry #15-7 at 4]. Attorney Hagler certified to the court that the appeal was without merit and asked to be relieved as counsel. [Entry #15-7 at 11]. In Petitioner's *pro se* response to the *Anders* brief, he raised the following issue: "Whether the Court lost subject matter jurisdiction to impose sentence for armed robbery, and assault and battery with intent to kill?" [Entry #15-8 at 2].

On July 14, 2005, the Court of Appeals filed an unpublished decision dismissing Petitioner's appeal pursuant to the *Anders* procedure and granted counsel's petition to be relieved. [Entry #15-9]. The remittitur was issued on August 3, 2005. [Entry #15-10].

Petitioner filed an application for post-conviction relief ("PCR") on September 14, 2005, raising the following issues: (1) he was entitled to a lesser-included offense charge to the jury because the state's evidence was insufficient to support a conviction of ABWIK and armed robbery; (2) he was entitled to a directed verdict because there was a material variance between the charges and proof at trial; (3) the jury verdict was inconsistent because the jury convicted applicant of armed robbery and ABIK but acquitted Applicant of possession of a weapon during a violent crime; (4) the trial court erred in the charge to

---

[2] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

the jury as to when an accused person may be a principal to a crime; and (5) both trial counsel and appellate counsel were ineffective.   [Entry #15-4 at 21-32].

Petitioner amended his PCR with the benefit of PCR counsel, Charles T. Brooks, III on November 30, 2007 to include a claim of ineffective assistance of counsel.   [Entry #15-4 at 50].   On December 7, 2007, Petitioner filed an amended PCR application, raising the following grounds of ineffective assistance of counsel: (1) failing to object to the trial judge's jury charge on the elements of intent; (2) failing to object to the judge's charge on malice; (3) expressing his personal opinion during closing argument; (4) failing to investigate a witness's plea agreement with the state; (5) failing to request a *Batson* hearing after the state exercised peremptory challenges against four black male jurors; (6) failing to object to the prosecutor's personal opinion in opening and closing statements; (7) failing to object to hearsay testimony; (8) failing to investigate into all matters of the weapon said to be used in the crime; (9) failing to object to hearsay testimony given by Officer Lambert about the condition of the victim at the scene of the crime; (10) failing to request that the state disclose the material where state witness plea agreement was made; and (11) failing to object to the trial judge reading exhibits to the defense counsel in the presence of the jury. [Entry #15-4 at 33-49].

On December 19, 2007, Petitioner added the following ground of ineffective assistance of counsel: (12) failing to object to the judge's instructions on the "hand of one, hand-of-all" charge.   [Entry #15-4 at 51-57].   On January 3, 2008, Petitioner corrected two paragraphs of his December 9, 2007 amendment. [Entry #15-4 at 58-59].

A PCR evidentiary hearing was held before the Honorable George C. James, Jr. on September 17, 2008, at which Petitioner and Attorney Brooks appeared. [Entry #15-5 at 3-47]. On November 12, 2008, Judge James entered an order of dismissal, addressing Petitioner's claims that trial counsel was ineffective because he (1) failed to object to the criminal intent and malice jury charges; (2) failed to investigate a plea deal given to his co-defendant, Sellers; (3) failed to request a *Batson* hearing when the State allegedly used four of its peremptory strikes to exclude four black male jurors; (4) failed to object to the solicitor's comments in his opening and closing argument; (5) implicated Petitioner in his closing argument; (6) failed to investigate the type of weapon used; (7) failed to object to hearsay testimony of Officer Lambert; (8) failed to object to the "hand of one, hand of all" jury charge because it lacked sufficient emphasis on the issue of "probable and natural consequence;" and (9) failed to present evidence that Petitioner was in an unrelated fight involving a knife later on the night of the present crimes. [Entry #15-5 at 48-59].

Petitioner appealed from the denial of PCR. [Entry #15-11]. Appellate Defender Robert M. Pachak of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal and filed a *Johnson*[3] petition for writ of certiorari in the South Carolina Supreme Court on May 20, 2009 and petitioned to be relieved as counsel. [Entry #15-12]. The petition raised the following issue: "Whether defense counsel was ineffective in failing to object to a jury instruction on accomplice

---

[3] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals).

liability that did not explain that the assault was a natural or probable consequence of acts actually agreed on by co-defendants?" [Entry #15-12 at 3].

On June 25, 2009, Petitioner file a pro se brief in which he raised the following grounds of ineffective assistance of counsel:

1.  Trial counsel's (a) failing to object to the trial judge's jury charge on elements of intent; (b) failing to object to the jury charge on malice; (c) expressing his personal opinion during closing argument; (d) failing to investigate witness' plea agreement with the state; (e) failing to request that the state disclose material about state witness' plea agreement; (f) failing to object to trial judge reading exhibits to defense counsel in the presence of the jury; and

2.  PCR counsel's abolishing Petitioner's original PCR arguments.

[Entry #15-13].

On December 16, 2011, the South Carolina Supreme Court denied the petition and granted counsel's request to be relieved. [Entry #15-14]. The remittitur was issued on January 31, 2012. [Entry #15-15].

Petitioner filed this federal petition for a writ of habeas corpus on January 10, 2012. [Entry #1].[4]

---

[4] The petition was received by the court on January 12, 2012 and docketed on January 13, 2012. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988). Petitioner dated and deposited his petition in the prison mailing system on January 10, 2012. [Entry #1 at 14].

III.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following

grounds:

**Ground One:**        Ineffective assistance of counsel

Supporting Facts: Petitioner asserts that trial counsel was ineffective for failing to object and preserve issue of prosecutor's personal opinion in opening and closing statement. Trial judge error in the jury instruction on the element of intent. Trial judge error in the jury instruction on malice charge and trial counsel expressed his personal opinion during closing argument. Tr. p. 341, lines 3-12.

**Ground Two:**        Prosecutor's personal opinion in opening and closing statement

Supporting Facts: Petitioner asserts that it was improper for the prosecutor to state to the jury that Petitioner was guilty of assault and battery with intent to kill.

**Ground Three:**      Trial judge erred in the jury instruction on the element of intent.

Supporting Facts: Tr. p. 289, lines 14-25, p. 290, lines 1-25.

**Ground Four:**       Trial judge erred in the jury instruction on malice.

Supporting Facts: Tr. p. 28, lines 7-14.

[Entry #1 at 5-10].

B.    Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Habeas Corpus Standard of Review

1. Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal

9

court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

  (A) the applicant has exhausted the remedies available in the courts of the State; or

  (B) (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right

under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[5] Furthermore, strict time deadlines govern direct appeal

[5] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any

11

and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States pre Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir.2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary

---

failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

review by the South Carolina Supreme Court *"outside* of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file

a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.   As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.   *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply.   *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S.

722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred.    *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim.    *Id.*    Absent a showing of "cause," the court is not required to consider "actual prejudice."    *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995).    However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### D.    Analysis

### 1.    Procedurally-Barred Grounds

Respondent contends that Petitioner's Grounds Two, Three, Four and a portion of Ground One are procedurally-barred to the extent that they were not raised in a direct

appeal or PCR appeal. The undersigned agrees that the procedural bar applies to these grounds. In the first portion of Ground One, Petitioner alleges counsel was ineffective for not objecting and thereby preserving the issue of the prosecutor's personal opinion in opening and closing statement. In Ground Two, Petitioner alleges that it was improper for the prosecutor to state his personal opinion in opening and closing statement to the jury that Petitioner was guilty of ABWIK. In Grounds Three and Four, Petitioner alleges that the trial judge erred in his charge to the jury on malice and intent. These grounds were not argued on direct appeal or during the PCR proceeding, nor addressed by the order denying PCR relief. Petitioner has not demonstrated that he sought a ruling by filing a timely Rule 59(e) motion. Under state court procedure, the state supreme court has held that such issues are not preserved for consideration on appeal. *Marlar*; *Simpson v. Moore*, 627 S.E.2d 701, 708 n.3 (S.C. 2006); *Harris v. State*, 581 S.E.2d 154 (S.C. 2003).

Therefore, to the extent that these grounds were not raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

2.      Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these grounds. In all cases in which a state prisoner has defaulted his federal claims in

state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on these grounds. Petitioner had a trial in which he raised no objection, had a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise

these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve the issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, witnesses testified to the facts summarized in the Factual Background section above. In light of the foregoing, Petitioner cannot show actual innocence, and therefore, the procedural bar applies to the issue of the prosecutor's personal opinion in opening and closing statement stated in Ground One, as well as the entirety of Grounds Two, Three, and Four.

Respondent does not dispute that Petitioner's remaining arguments in Ground One have been properly exhausted. Therefore, they are addressed on their merits below.

3.    Exhausted Arguments in Ground One

In the remainder of Ground One, Petitioner claims that counsel was ineffective (a) for not objecting to the trial judge's erroneous jury instruction on the element of intent and malice; and (b) for expressing his personal opinion during closing argument.

(a)    Failure to Object to Criminal Intent/Malice Jury Charges

Petitioner argues that the trial court's charge on criminal intent and malice improperly shifted the burden from the state by creating mandatory presumptions.   The relevant portion of the criminal intent charge follows::

> . . . So criminal intent is a state of mind, and it operates jointly with an act in the commission of a crime. Criminal intent is a mental state. It is a conscious wrongdoing. And so it is up to you the jury to determine what the defendant intended to do based on the circumstances shown to have existed. I tell you that the state must prove criminal intent as it must prove every other element beyond a reasonable doubt. And in that regard, evidence of the character of the assault, the character of the instrument used, the manner in which it was used, the purpose which it accomplished and the resulting wounds or injuries may be considered by you in determining the intent with which the assault was committed. Intent may be inferred when it is demonstrated that the defendant voluntarily and willfully commits an act, the natural tendency is to destroy another's human life.

[Entry #15-3 at 75].   The relevant portion of the malice charge follows:

> . . . Now malice may be inferred from conduct which shows a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon. A deadly weapon is any instrument or substance which is likely to cause death or great bodily harm. And whether an instrument has been used as a deadly weapon depends on the facts and circumstances of every case. I tell you ladies and gentlemen, that a pistol, a handgun, a firearm is an example of a deadly weapon.

[Entry #15-3 at 74].

At PCR, Petitioner testified that trial counsel should have objected to the instruction on criminal intent because the trial judge "used the term that criminal intent can be assumed from the use of a deadly weapon and . . . I felt that [trial counsel] should have objected to that because it is my understanding that criminal intent cannot be assumed from the use of a deadly weapon not from my actions." [Entry #15-5 at 6]. Petitioner noted that the state did not introduce a weapon at trial. *Id.* Trial counsel testified that he did not know of any basis on which to object to the jury charges, because the trial judge used "may and inferences," as opposed to "must or presume." [Entry #15-5 at 39].

Addressing Petitioner's allegations as to this claim, the PCR court found as follows:

I find no error in these [intent and malice] instructions. The instructions did not contain language creating a mandatory, burden-shifting presumption. In reading the charge as a whole, a juror could not have reasonably believed that evidence of the use of a deadly weapon dictated a finding of malice. *See for example State v. Friend*, 276 S.C. 552, 281 S.E.2d 106 (1981). Trial counsel was not ineffective for failing to object to the instructions.

[Entry #15-5 at 52].

Petitioner's complaint as to the implied malice instruction centers on the portion of the charge allowing jurors to draw an inference of malice from the use of a deadly weapon, where the state did not introduce at trial the weapon with which the victim was shot. Additionally, Petitioner claims that the trial judge's example of a firearm, as opposed to "a dart, slingshot, bat, a firearm or any instrument used to cause death or great bodily harm" placed emphasis on the weapon being a firearm and thereby unconstitutionally shifted the burden of proof on Petitioner. [Entry #22 at 2-3]. Petitioner was the only defendant in the

weapon charge, of which he was ultimately acquitted. He argues that when the jury found him not guilty of the weapon charge, "the key element was taken away from both the ABWIK and armed robbery" charges, and therefore he is entitled to habeas relief. [Entry #22 at 4]. The undersigned finds no merit to any of Petitioner's arguments.[6]

The jury instructions must be viewed as a whole and there is error only if the petitioner proves a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380-81 (1990). *See also Estelle*, 502 U.S. at 72. The Court explained that this standard was a "likelihood" of misinterpretation as opposed to a "slight possibility" of misinterpretation, and that a juror "could have" misinterpreted an instruction is different from the reasonable likelihood that the juror did misinterpret the instruction under the standard in *Estelle*. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000).

Petitioner cites for support, *State v. Belcher*, 685 S.E.2d 802 (2009), in which the court held that "where evidence is presented that would reduce, mitigate, excuse or justify a homicide (or assault and battery with intent to kill) caused by the use of a deadly weapon, juries shall not be charged that malice may be inferred from the use of a deadly weapon." *Id.* at 810. However, *Belcher* was decided subsequent to Petitioner's trial and sentencing and specifically held that: "Because our decision represents a clear break from our modern precedent, today's ruling is effective in this case and for all cases which are pending on

---

[6]  Petitioner attempts to assert a stand-alone confrontation clause argument in his response [Entry #22 at 7].   However, this claim was not alleged in his petition, is too late to assert now, and was not exhausted at the state court level, regardless.

direct review or not yet final where the issue is preserved. . . . Our ruling, however, will not apply to convictions challenged on post-conviction relief. *Id.* at 810-11. Because Petitioner's conviction was affirmed in 2005 and he was on appeal from denial of PCR when *Belcher* was decided, the change in law did not apply to his case, and the jury charge was appropriate when given. *See Wilds,* 584 S.E.2d at 142-43 and *Sheppard v. State*, 594 S.E.2d 462, 472 (S.C. 2004).

Jury charges raising a mandatory presumption rather than a permissible inference of malice constitute reversible error. *State v. Elmore*, 308 S.E.2d 781 (S.C. 1983). However, contrary to Petitioner's claim, the instructions informed jurors that the inference of malice and criminal intent was evidentiary only and that the it "may be considered . . . along with all the other evidence the other," that the inferences were permissive and that jury did not have to draw the inference but could give it "such weight, if any" the jury felt was proper. The instructions provided that the burden of proof remained with the state at all times and that Petitioner did not have any burden of proof. [Entry #15-3 at 67].

In light of the foregoing permissive, rather than mandatory, presumption language in the jury charge, the undersigned finds Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence).   As the PCR court held, in reading the charge as a whole, a juror could not have reasonably believed that evidence of the use of a deadly weapon dictated a finding of malice, and therefore, trial counsel was not ineffective for failing to object to the instructions.

(b)     Counsel's statement in closing that Petitioner might be guilty

Petitioner next complains about a statement that trial counsel during his closing. Trial counsel began his closing argument by stating that the crimes occurred in a space of thirty seconds and that neither counsel, the prosecutor, nor the victim knew what happened during those thirty seconds. [Entry #15-3 at 31-32]. He spent much of his closing attacking Sellers' credibility. [Entry #15-3 at 32-50].   Towards the end of his closing, he made the highlighted remark below, on which Petitioner bases his complaint:

> Only then after that does it come in well, who shot you. Did you see him shoot. Yes. Who shoot him.   Well Gifford Brown shot him.   That's what he said at that point.   But when they're just asking him and he's thinking in his mind and this is a role through here, that's not what comes up. When he takes all this time to write this statement to his lawyer, and takes all this time, and say yoe, wake up, I am going to rob this dude.   I heard a gunshot, I was scared to death.   Now that doesn't sound to me like he saw any of this stuff. He talks about, they've got this other cat that they say and even Mr. Wilder if you believe that.   And if you believe Mr. Wilder can recall that there's a heavy set guy or whatever, well that's another guy there or whatever. We've got three people there.   We've got this heavy set guy.   We've got

> Mr. Sellers who I'll guarantee you Mr. Sellers, I don't care if it happened the way Mr. Sellers said; then he's telling the truth. And if it didn't happen that way, he's going to tell it that way. He's going to tell it his way that somebody else said it, I can tell you that. **It may be that Gifford Brown did it, but even if he did it, he's going to say somebody else did it, and I didn't have anything to do with it. I can tell you that much.**

[Entry #15-3 at 49-50]. Petitioner testified at the PCR hearing that "Mr. Carraway stated in closing arguments that it may have been that my client Gifford Brown committed these crimes, but even if he did do it, he's going to say that somebody else did it, I can tell you that much and I felt that by him doing that, stating that to the jury that he like took away the prosecution job and just said that I was guilty and I plead not guilty in the trial, so by him doing that, I felt that he violated my rights" and that it hurt Petitioner's defense. [Entry #15-5 at 7, 12].

Respondent notes that trial counsel had examined Sellers about the two or three different statements Sellers had given and the conflicting accounts of whether he saw Petitioner shoot the victim; whether Sellers was actually putting the blame on Petitioner; and that Sellers "was trying to beat the wrap placing it on" Petitioner. [Entry #15-5 at 22-23].

At PCR, trial counsel explained:

> what I was saying there was if you read the whole thing I was saying, you know I don't know, none of us know what happened out there that night, all we know is that both of these guys [Sellers and Brown] were brought in, they were charged with all of this or whatever, and each one of them, I will guarantee you, is going to try to put themselves asleep in that truck, and doesn't know anything that happened. Mr. Sellers or Mr. Brown is going to do the same thing, Mr. Sellers is going to do the same thing, Mr. Brown is. If

there were five guys out there, and this man got shot, all five are going to say
I was asleep in the truck.

[Entry #15-5 at 27-28].

Respondent argues that the confusion relating to this allegation derives from trial

counsel's repeated use of the pronoun "he" when referring to Sellers and Brown, and that if

the surname of each man had been used, then the challenged comments by counsel would

read as follows: "It may be that Gifford Brown did it, but even if [Sellers] did it, [Sellers is]

going to say somebody else did it, and I [Sellers] didn't have anything to do with it. I

[counsel] can tell you that much."

Petitioner, on the other hand, argues that the challenged comments should be

interpreted as follows: "It may be that Gifford Brown did it, but even if [Brown] did it,

[Brown] going to say somebody else did it, and I [Brown] didn't have anything to do with

it. I can tell you that much." [Entry #22 at 9].

The PCR judge rejected Petitioner's allegation, as follows:

Applicant asserts that trial counsel was ineffective in that his closing
argument implicated Applicant in the crime. It is clear from reading the
argument as a whole that trial counsel did not imply that Applicant was
guilty, and the comment that Applicant points to is taken out of context. The
comment was part of trial counsel's argument as to the credibility of Sellers.
I find that counsel's argument was reasonable within professional norms,
and in the context of the closing argument as a whole, this isolated passage
could not have prejudiced Applicant.

[Entry #15-5 at 55-56].

The PCR court had the opportunity to view the witnesses and judge their credibility accordingly, and found trial counsel's testimony to be credible. The PCR court's determination of this issue is supported by the record.

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived the him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating

an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

Petitioner has failed to overcome the presumption of correctness under § 2254(e)(1) regarding this issue. After reviewing the record, the undersigned is unable to find that trial counsel's performance in making the above referenced remarks was indicative of deficient representation. Rather, when considering the statement in context with the remainder of his closing argument, it does not constitute a "failure to function in any meaningful sense as the Government's adversary," or otherwise show deficiency in counsel's performance. *See Nixon*, 543 U.S. at 190-91. Additionally, the PCR court's construction is much more reasonable in light of the remarks that immediately followed and ended counsel's closing, wherein trial counsel told jurors that it was for them to decide

what happened on the night of the crimes and whether Petitioner's guilt had been established by proof beyond a reasonable doubt. [Entry #15-3 at 50].

Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue and has failed to show he is entitled to federal habeas corpus relief.

IV.     Conclusion

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #16] be granted.

        IT IS SO RECOMMENDED.

                                        *Shiva V. Hodges*

August 23, 2012                         Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).